ARMSTRONG CORK Co., et al. *v.* SHEPPARD.

No. 39374          December 6, 1954          76 So. 2d 225

*Butler, Snow, O'Mara, Stevens & Cannada,* Jackson, for appellants.

*Pyles & Tucker,* Jackson, for appellee.

Kyle, J.

This case is before us on appeal by the Armstrong Cork Company and the Standard Accident Insurance Company, its insurance carrier, from a judgment of the Circuit Court of Hinds County reversing an order of the Workmen's Compensation Commission affirming an award of compensation benefits made by the attorney-referee to Jodie R. Sheppard, the claimant, for the partial loss of the use of his left leg, and making separate awards to the claimant for the partial loss of the use of the leg and foot.

Sheppard was an employee of the Armstrong Cork Company, and on June 26, 1951, while performing services for his employer, Sheppard sustained a crushing injury to his left foot and a compound fracture of his left leg. He was taken immediately to the Baptist Hospital, in the City of Jackson, for medical and surgical treatment, and was placed under the care of Dr. W. E. Warner, an orthopedic surgeon. The doctor found that Sheppard's injuries consisted of a compound fracture of the lower third of the left tibia and fibula, lacerations of the dorsum of the foot and ankle and wounds on the plantar surface of the left foot. Sheppard remained in the hospital until July 12, 1951, and after leaving the hospital continued under the treatment of Doctor Warner for a period of several weeks. He returned to work on January 23, 1952, but was unable to resume the heavy duties of his former employment and was assigned to another job.

Sheppard was paid compensation benefits by the insurance carrier for temporary total disability for a period of 30 weeks at the rate of $25 per week.

After Sheppard went back to work on January 23, 1952, the insurance carrier paid to Sheppard the sum of $25 per week for a period of 25 weeks as compensation for permanent partial loss of the use of the left foot. The payments were made upon the basis of a report made by Doctor Warner April 1, 1952, which showed a permanent partial disability of 20 per cent loss of the use of the left foot.

Sheppard continued to suffer pain from the injury to his foot and leg, and on April 24, 1952, consulted Dr. George D. Purvis, an orthopedic surgeon of Jackson, who examined him at that time. Doctor Purvis examined Sheppard again on January 16, 1953, and as a result of that examination concluded that Sheppard had a permanent disability of 10 per cent of the function of the left leg as a whole, and a permanent disability of 30 per cent of the function of the left foot.

Sheppard was unwilling to accept the twenty-five weekly payments of $25 each paid to him by the carrier as a settlement in full of his claim for compensation for permanent partial disability, and refused to sign the final report and settlement receipt which was forwarded to him by the carrier for his signature on July 15, 1952; and on February 24, 1953, Sheppard filed with the Workmen's Compensation Commission an application to have his claim listed as a controverted matter and set for hearing on the amount of compensation due him for permanent partial disability of his leg and foot. The cause was set for hearing on March 24, 1954, and Sheppard asked that the Commission award him compensation for the permanent partial loss of the use of his left leg in the proportion of 10 per cent of the total loss of the use of said member, at the minimum rate of $10 per week for a period of 175 weeks, and for the permanent partial loss of the use of the left foot in the proportion of 30 per cent of the total loss of the use of said member for a period of 125 weeks, such awards to run consecutively and the insurance carrier to be allowed credit for the $625 theretofore paid to him as compensation for permanent partial disability.

Doctor Warner and Doctor Purvis both testified during the hearing before the attorney-referee. Doctor Warner evaluated the claimant's permanent partial disability as a 20 to 25 per cent loss of the use of the leg. Doctor Purvis evaluated the disability as a 32.5 per cent loss of the use of the leg. In reply to a request for separate evaluations of the disability to the leg and the disability to the foot, based upon the examination which he had made on January 16, 1953, Doctor Purvis recommended a disability rating of 10 per cent of the function of the left leg and a disability rating of 30 per cent of the function of the left foot.

The attorney-referee found that the evidence was sufficient to establish as a fact that the claimant had a 30 per cent partial disability to his left leg as a result of

said injury; and the attorney-referee ordered that the employer and its insurance carrier pay to the claimant compensation benefits at the rate of $25 per week for a period of 52½ weeks for a 30 per cent loss of the use of his left leg, less the amount already paid therefor, and that the employer and its insurance carrier pay Dr. George D. Purvis the charges for his medical examination and narrative report. The claimant asked for a review of the award by the full Commission, and such review was granted. The Commission affirmed the award of the attorney-referee and ordered that the average weekly wage of the claimant be computed at $75.62 per week. The claimant then appealed from the order of the Commission to the circuit court.

The circuit court after reviewing the record found that there was prejudicial error in the findings of fact and the conclusions of law of the Commission; and the circuit court reversed the award made by the Commission, and made new findings of its own; and the court held that, under the provisions of Section 8 (c) (22) of the Workmen's Compensation Act, as amended (Section 6998-09 (c) (22), Mississippi Code of 1942, Vol. 5-A, Recompiled), the claimant was entitled to an award of compensation for 30 per cent loss of the use of the left foot and an award of compensation for 10 per cent loss of use of the left leg, which awards should run consecutively. The circuit court also held that the proportion of percentage of permanent partial disability of each of the scheduled members should be applied to the average weekly wage, reduced to 66⅔ per cent thereof, in computing the amounts of the weekly compensation to which the claimant was entitled for the respective disabilities; and the court ordered that the amount so found to be due for each such member should be paid for the number of weeks provided in the schedule for such member, and that the awards should run consecutively. The court found that the compensation for the 30 per cent loss of use of the left foot amounted to $15.13 per week

for a period of 125 weeks beginning January 23, 1952, from which amount the sum of $625 theretofore paid should be deducted; and the court found that the compensation for the 10 per cent loss of the use of the left leg amounted to $5.04 per week, which was less than the minimum compensation of $10 per week provided in Section 6 (b) of the act, and that the claimant should be paid compensation for said ten per cent loss of use of the left leg at the minimum rate of $10 per week for a period of 175 weeks, payable consecutively after the above mentioned award for permanent partial disability of the left foot had been paid. And the court entered a judgment for the above mentioned awards and also the charges of Dr. George D. Purvis for medical examination and narrative report.

From that judgment the employer and its insurance carrier have prosecuted this appeal.

The appellant argues two points as ground for reversal on this appeal: (1) That the circuit court erred in reversing the order of the Commission as to the method of calculation of compensation for permanent partial disability; and (2) that the court erred in reversing the order of the Commission awarding compensation to the claimant for a permanent partial disability of 30 per cent loss of use of the left leg, and in ordering the employer and its insurance carrier to pay to the claimant separate awards for a 10 per cent loss of the use of the leg and a 30 per cent loss of the use of the foot.

The pertinent paragraphs of Section 8 (c) of the Workmen's Compensation Act, as amended, are as follows:

"(c) Permanent partial disability: In case of disability partial in character but permanent in quality, the compensation shall be sixty-six and two thirds per centum (66⅔%) of the average weekly wages, subject to the maximum limitations as to weekly benefits as set up

in this act, which shall be paid following compensation
for temporary total disability paid in accordance with
subdivision (b) of this section, and shall be paid to the
employee as follows:

| Member Lost | Number weeks compensation |
|---|---|
| * * * | |
| (2) Leg | 175 |
| * . * * | |
| (4) Foot | 125 |
| * * * | |

"(15) Amputated arm or leg: Compensation for an
arm, or leg, if amputated at or above the wrist or ankle,
shall be for the loss of the arm or leg.

    * * *

"(17) Two or more .digits: Compensation for loss of
two or more digits, or one or more phalanges of two or
more digits, of a hand or foot may be proportioned to
the loss of use of the hand or foot occasioned thereby,
but shall not exceed the compensation for loss of a hand
or foot.

    * * *

"(19) Partial loss or partial loss of use: Compensa-
tion for permanent partial loss or loss of use of a mem-
ber may be for proportionate loss or loss of use of the
member.

    * * *

"(22) In any case, in which there shall be a loss of,
or loss of use of, more than one member or parts of
more than one member set forth in paragraphs (1) to
(19) of this subdivision, not amounting to permanent
total disability, the award of compensation shall be for
the loss of, or loss of use of, each such member or parts
thereof, which awards shall run consecutively, except
that where the injury affects only two or more digits of
the same hand or foot, paragraph (17) of this subdivi-
sion shall apply."

It is not necessary that we discuss at length the appellants' contention that the circuit court erred in rejecting the formula adopted by the attorney-referee and approved by the Commission for computing the amount of compensation to be paid to the injured employee for the partial loss of the use of the leg and fixing the time during which such payments were to be made. The formula used by the attorney-referee in the case that we have here is the same as the formula used by the hearing officer and approved by this Court in the case of Nowlin v. Mississippi Chemical Co. (Miss.), 70 So. 2d 49, (Opinion rendered February 1, 1954.) We therefore hold that the learned circuit judge erred in rejecting that formula and substituting therefor a formula which required the payment of compensation for the maximum number of weeks for which payments would have been required if there had been a total loss of use of the member.

The second point argued by the appellants' attorneys calls for a more extended discussion. The attorney-referee and the Commission, as stated above, found that the evidence was sufficient to establish as a fact that the claimant had a 30 per cent partial disability to his left leg as a result of the injury complained of. The circuit court rejected that finding, and incorporated in its order a finding of its own. That finding was that the claimant had received a separate and distinct injury to the left foot, with a resulting permanent partial disability of 30 per cent loss of use of the left foot, and that the claimant had received a separate and distinct injury to the left leg, resulting in a permanent partial disability of 10 per cent loss of use of the left leg.

We have made a careful study of the testimony of the two doctors who testified at the hearing before the attorney-referee. There was no real conflict in the testimony except as to the extent of the claimant's disability. Both testified that the claimant's injuries had left him with a permanent partial disability of the leg and foot.

Doctor Warner estimated the disability as a 20 to 25 per cent disability of the leg, which included the foot. Doctor Purvis stated that in his opinion the claimant's disability was a disability of 32.5 per cent of the leg as a whole. Doctor Purvis stated that his breakdown of the disability into a disability of the leg and the foot as such was made at the request of the claimant's attorney; that his usual method of rating a claimant's disability in a case of this kind was to give a rating of disability of the extremity as a whole, and that in his opinion it was not proper to breakdown disability evaluation into individual parts of the same extremity as one disability has a definite effect on the other disability.

The question presented for our decision is, whether in a case of this kind, where the injury complained of has affected the bones and ligaments of two of the members specifically mentioned in subparagraphs (1) to (12) of Section 8 (c), and the lesser member is an extension of the greater member, and such injury has resulted in a permanent partial disability to each such member, separate awards should be made for the partial loss of the use of each such member, or whether only one award should be made to cover the permanent partial disability of the greater member as a whole.

That question has not been considered by us heretofore, but the question has been considered by the courts of several other states, and in each of the cases that we have examined the court has held that, where multiple injuries are sustained by the employee in a single accident, affecting directly two members of the same extremity, if the injuries result in some disability to the greater member other than that occasioned by the disability to the lesser member, the disability rating should be for loss of use of the greater member. See State ex rel. Kennedy et al. v. District Court Clay County et al. (1915), 129 Minn. 91, 151 N. W. 530; Gonzales v. Pecos Valley Packing Co., N. Mex. (1944), 146 P. 2d 1017; Industrial Commission of Colo. v. General Accident Fire

& Life Assurance Corp. Ltd., et al. (Colo. 1922), 204 P. 338; Chamberlain v. Bowersock Mills and Power Co. (1939), 150 Kan. 934, 96 P. 2d 684, 129 A. L. R. 654; Nolan v. Ernest Const. Co. (Ala. 1942), 10 So. 2d 547; Ocean Accident & Guarantee Corporation, Limited, et al. v. Harden (1931), 44 Ga. App. 223, 160 S. E. 699.

In the case of State ex rel. Kennedy et al. v. District Court Clay County et al. (1915), supra, which has been cited many times by the courts of other states, the Court held that in a hearing under the Workmen's Compensation Act to ascertain the compensation to be awarded to an injured employee, the court should have determined the percentage of total disability of the arm as a whole, including the forearm and hand, and fixed the compensation accordingly, and that it was improper in such a case to divide the injuries into two units, those to the hand, and those to the arm. The Court in its opinion said: "If there were permanent injuries to the arm above the elbow, the court should not have attempted to separate these injuries from those to the hand, but should have found the percentage of total disability to the arm as a whole, and should have awarded compensation accordingly."

In the case of Flicker v. Mac Sign Co. et al. (1930), 252 N. Y. 492, 170 N. E. 118, the Court held that a permanent injury to the foot by reason of a fracture or chipping of the first metatarsal bone, with consequential injury to the toe, was compensable under Workmen's Compensation Law (Consol. Laws, c 67), par. 15 subsec. 3, subds. (a) to (1), providing compensation for a determinate number of weeks rather than under subsection 3, subd. (u), dealing with permanent partial disability not specifically scheduled, in that a toe is not to be treated as a separate member from a foot, where loss of use of the foot includes as a normal consequence the loss of use of the toe. In that case the Court said:

"We think the award has its roots in a misconception of the statute. A toe is not to be treated as a separate

member from a foot where loss of use of the foot includes as a normal consequence the loss of use of the toe. * * * If any other rule were followed, a claimant suffering the amputation of a foot might have compensation from his employer for the loss of the foot and compensation for the loss of the five toes in addition. The fingers would also be added to the loss of a hand. No such result was intended by the framers of the statute * * * . The whole is still equal to the sum of all its parts.''

In the case that we have here, if the appellee's injuries had been of such serious nature as to require the amputation of the left leg about the ankle, the appellee would have been entitled to compensation under subparagraph (15) of Section 8 (c) for the loss of the leg; but it could not be reasonably contended that he would have also been entitled to additional compensation for the loss of the foot.

The proof showed that there were multiple injuries to the appellee's foot and the lower part of the leg above the ankle. The injuries to the foot necessarily affected the use of the leg. The injury to the leg affected directly the use of the foot as well as the leg.

■■■ The attorney-referee and the Commission were amply justified in holding that the basis of the award of compensation to the claimant should be the proportionate loss of use of the leg as a whole, and in refusing to attempt to separate the injury to the leg above the ankle from the injuries to the foot for the purpose of evaluating the appellee's claim for compensation.

■■■ There was ample evidence to support the finding of the attorney-referee and the Commission that the appellee had suffered a permanent partial disability of 30 per cent loss of use of the left leg; and such finding should have been affirmed by the circuit court.

The judgment of the circuit court is reversed and the order of the Commission is reinstated and affirmed, and the cause remanded.

Reversed, judgment rendered, and cause remanded.

*Roberds, P. J.,* and *Hall, Arrington* and *Gillespie, JJ.,* concur.